Jon G. Shadinger Jr., Esq. (036232017)
Shadinger Law, LLC
2220 N East Ave
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| DENNIS MAURER, an Individual<br><br>Plaintiff,<br><br>vs.<br><br>PLEASANTVILLE DONUTS, INC., a New Jersey Corporation,<br><br>Defendant. | Case No. 1:26-cv-13058<br><br>**COMPLAINT** |

## Introduction

Plaintiff, DENNIS MAURER, an individual, on his own behalf and on the behalf of all other similarly situated mobility impaired persons hereby sues the Defendant, PLEASANTVILLE DONUTS, INC., a New Jersey Corporation, ("Defendant") for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 et seq. ("ADA") and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. ("LAD").

## The Parties

1. Plaintiff, DENNIS MAURER, is an individual over eighteen years of age and is otherwise sui juris. Mr. Maurer resides at 8 Prospect Avenue, Egg Harbor Township, NJ 08234.

2. Defendant, PLEASANTVILLE DONUTS, INC., owns/operates a place of public accommodation, known as Dunkin' Donuts ("Dunkin'"), alleged by the Plaintiff to be operating in violation of Title III of the ADA and the LAD.

**Jurisdiction and Venue**

3. Defendant's property/place of public accommodation, Dunkin', is located at 915 N New Road, Pleasantville, NJ 08232 (the "Property").

4. Venue is properly located in the District of New Jersey because venue lies in the judicial district of the property situs. The Property is located in and does business within this judicial district.

5. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

6. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

7. The Defendant owns, leases, leases to, and/or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

8. Plaintiff is an individual with disabilities as defined by and pursuant to the ADA. Mr. Maurer has multiple sclerosis and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk, stand, reach, or lift. Mr. Maurer, at all times, requires the use of a wheelchair to ambulate.

[1] See also 28 U.S.C. § 2201 and 28 U.S.C. § 2202
[2] 28 CFR § 36.201(a) and 28 CFR § 36.104
[3] as defined by 28 CFR § 36.105(b)(1-2)

## Factual Background

9. Mr. Maurer is a staunch advocate of the ADA. Since becoming mobility impaired (and having to fully rely on the use of his wheelchair to ambulate) he has dedicated his life to the elimination of accessibility discrimination so that he, and others like him, may have full and equal enjoyment of all public accommodations without fear of discrimination and repeated exposure to architectural barriers.

10. Generally speaking, Mr. Maurer continues to encounter architectural barriers at many of the places that he visits. Seemingly trivial architectural features such as parking spaces, curb ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, become arduous and even dangerous.

11. The barriers to access that Mr. Maurer experiences at differing places of public accommodation are often similar in nature. For example, he is repeatedly faced with sloping in parking lots, improper curb ramps, abrupt changes of level within paths of travel, and non-accessible restrooms. He has become frustrated and disheartened by the repetitiveness of the complaints he has been forced to make to the employees and management at various establishments in the past; most often to no avail. Thus, he now finds his redress through the ADA; as Congress intended.

12. Furthermore, Mr. Maurer is the president of an advocacy group, known as The Independence Project, whose goal is to foster a community of disabled people, educate them as to their rights, and ensure their accessibility to places of public accommodation across the country. In his capacity as the president and member of this group, Mr. Maurer inspects properties that were previously in violation of the ADA and subject to litigation by the Independence Project and/or its members. Such properties are inspected by Mr. Maurer, or other members (based on geography),

in order to determine if such have been made accessible – as agreed – and continue to remain in compliance; it is his normal practice to inspect the properties under his purview twice per year. Mr. Maurer also inspects additional properties that he visits as a patron when they are incident to his inspection routes and/or along his usual travel routes.

13. A selection of properties that Mr. Maurer's regularly inspects for continuing compliance which are located in the vicinity of the Property include the following:

a. 600 Black Horse Pike, Pleasantville, NJ 08232; *1:16-cv-03035 (D.N.J.)*
b. 831 N New Road, Pleasantville, NJ 08232; *1:19-cv-20468 (D.N.J.)*
c. 800 Black Horse Pike, Pleasantville, NJ 08232; *1:26-cv-02483 (D.N.J.)*
d. 320 W Absecon Blvd, Absecon, NJ 08201; *1:19-cv-16401 (D.N.J.)*

14. Mr. Maurer has visited the Property on several occasions over the years; with his last visits occurring on or about July 30, 2026. On these, and past occasions, Mr. Maurer has visited the Property as a bone fide patron with the intent to avail himself of the goods and services offered to the public within but found that the Property was rife with violations of the ADA – both in architecture and in policy.

15. Further, Mr. Maurer resides just 10 miles from the Property, is a former resident of Pleasantville, and travels frequently to and through the area.

16. In sum, the Property is (1) located on a major road that he regularly travels, (2) in an area he regularly visits, (3) in proximity to many places Mr. Maurer visits regularly and will continue to visit regularly, including hotels, (4) near several other properties inspected by Mr. Maurer for ADA compliance, and (5) on route from his home to Atlantic City.

17. Mr. Maurer shall return to the Property not only as a patron but also to monitor any progress made with to respect to ADA compliance – he sincerely hopes that his return visits are not made

in vain.

18. Mr. Maurer has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Property.

19. The ADA has been law for over thirty (30) years and the Property remains non-compliant. Thus, the Mr. Maurer has actual notice and reasonable grounds to believe that he will continue to be subjected to discrimination by the Defendant.

20. Mr. Maurer has a realistic, credible, existing, and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the Property as described but not necessarily limited to the barriers he has personally experienced which are listed in Paragraph 28 of this complaint.

21. Following any resolution of this matter Plaintiff will ensure that the Defendant undertakes the remedial work that is required to cure existing violations, under the appropriate standard and in compliance with the ADA.

## COUNT I
### Violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq.

22. Plaintiff realleges and incorporates by reference all of the allegations contained in all of the preceding paragraphs.

23. Enacted by overwhelming bipartisan consensus in 1990, and reinforced with the same consensus in 2008, the ADA reflects Congress's recognition that "discrimination" has precluded "many people with physical or mental disabilities" from "fully participat[ing] in all aspects of society."[4]

[4] 42 U.S.C. § 12101(a)(1)

24. Congress's objective was "the elimination or reduction of physical and social structures" that thwart "equal-citizenship stature for persons with disabilities."[5]

25. Title III of the ADA provides a cause of action to "any person" with disabilities who personally encounters an unlawful accessibility barrier and is thus "subjected to discrimination on the basis of disability." [6]

26. The Defendant has discriminated against the Plaintiff, and other similarly situated mobility impaired persons, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by the ADA.

27. A preliminary inspection of the Property has shown that violations of the ADA exist. That inspection, performed by Plaintiff's expert, further revealed that the remediation of all violations/barriers listed in Paragraph 28 are both technically feasible and readily achievable.

28. The following are architectural barriers and violations of the ADA that Mr. Maurer has personally encountered during his visits to the Property:

**<u>Parking and Exterior Accessible Route</u>**

a. The designated accessible parking area located at Dunkin' contains sloping beyond the allowable limits (2.0%), abrupt changes in level due to surface cracks, lacks a compliant access aisle, and fails to provide a compliant accessible route from the parking area to the entrance; in violation of the ADAAG and Sections 402, 406, and 502 of the 2010 ADA Standards. These barriers have presented Mr. Maurer with a tipping hazard and could also

[5] *Tennessee v. Lane*, 541 U.S. 509, 536 (2004) (Ginsburg, J., concurring)

[6] 42 U.S.C. § 12188(a)(1)

cause damage to his wheelchair; these obstacles cannot be avoided since there is no other route into Dunkin'.

b. The designated accessible parking area at Dunkin' fails to provide a compliant accessible route from the parking area to the entrances and/or the accessible curb ramps; a violation of the ADAAG and Sections 402, 406, 502 of the 2010 ADA Standards. The curb ramp protrudes the access aisle and does not provide a level surface for Mr. Maurer to utilize his vehicular ramp. When attempting to travel from the parking area to the entrance Mr. Maurer has been impeded by excessive sloping within the curb ramp which presents him with a tipping hazard.

c. The exterior accessible route throughout the Property is impeded by cross-sloping beyond allowable limits (2%) and abrupt changes in level greater than ¼" inch; in violation of the ADAAG and Section 402 of the 2010 ADA Standards. Mr. Maurer has been impeded by the excessive sloping and abrupt changes of level – these conditions present a tipping hazard and could damage his wheelchair.

d. Dunkin' provides one (1) designated accessible parking spaces but, as it is not currently compliant, the Property fails to provide the requisite number of fully compliant accessible parking spaces and van-accessible parking spaces (as well as the requisite number of access aisles and van access aisles), a violation of Section 502 of the 2010 ADA Standards. The Property should contain at least one accessible parking space with is van-accessible, along with a compliant van-accessible access aisle.

e. The Property fails to provide a continuous accessible route which runs through the entirety of the Property and connects Dunkin' to the remainder of the parcel. Mr. Maurer cannot safely travel throughout the Property due to the lack of an accessible route; a violation of

the ADAAG and Section 402 of the ADA Standards.

f. The Property fails to provide a compliant route to the adjacent street/sidewalk. Mr. Maurer has been precluded from accessing the Property from these points of entry due to the lack of an accessible route; a discriminatory omission which limits his options for transportation and is a violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards.

**Access to Goods and Services**

g. Dunkin' provides interior service elements which are mounted beyond the allowable maximum height (34" AFF); in violation of the ADAAG and Section 308 of the 2010 ADA Standards. Due to their height or the presence of obstacles Mr. Maurer cannot make use of these elements (countertops, work surfaces, self-service stations, etc.).

h. Dunkin' fails to provide the requisite amount of accessible dining tables/accessible seating (5% of total seating); a violation of the ADAAG and Section 902 of the 2010 ADA Standards. The lack of dining tables which allow for a full forward approach prevents Mr. Maurer from dining comfortably within Dunkin'.

**Restrooms**

i. The restrooms within Dunkin' are inaccessible to Mr. Maurer and contain architectural barriers to access including a lack of wheelchair maneuvering clearance, improperly mounted grab bars, incorrect toilet centerlines, and obstructions within the clear floor space; violations of the ADAAG and Section 601 of the 2010 ADA Standards. These barriers have prevented Mr. Maurer from freely using the restrooms.

29. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 CFR part 36

("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 CFR § 1191, appendix B and D ("ADAAG"); and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[7]

30. The discriminatory violations described in Paragraph 28 may not be an exhaustive list of the ADA violations that exist at the Property, but they are the result of a preliminary inspection conducted by the Plaintiff (and his expert) and include all those personally experienced by Mr. Maurer. Plaintiff requires thorough inspection of the Defendant's place of public accommodation in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA/LAD.

31. Given the violations discovered and listed herein the Plaintiff alleges, on information and belief, that there are other violations/barriers at the Property which relate to his disability. Thus, Plaintiff requires thorough inspection of the Property in order to photograph and measure the architectural barriers which exist at the Property in violation of the ADA. Once said inspection has been completed, the Plaintiff may amend this complaint in order to provide proper notice to the Defendant regarding the full scope of this action.[8]

32. Plaintiff, and other mobility impaired persons, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

---

[7] 28 CFR § 36.104

[8] See *Doran v. 7-Eleven Inc.*, (9th Cir. 2008) 524 F.3d 1034 (holding that once a plaintiff encounters one barrier at a site, they can sue to have all barriers that relate to their disability removed regardless of whether or not they personally encountered them)

33. Defendant has discriminated against Plaintiff, and other mobility impaired persons, by denying access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

34. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to remove architectural barriers, and communication barriers that are structural in nature.[9]

35. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[10]

36. Defendant continues to discriminate against Plaintiff, and other mobility impaired persons, by failing to undertake such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[11]

37. Pursuant to 28 CFR § 36.304(a) the Defendant shall remove all architectural barriers, including communication barriers that are structural in nature, where such removal is readily achievable; this duty began at the outset of the ADA for all existing facilities (regardless of age) and remains continuous and ongoing.

38. If the Defendant's facility is one which was designed and constructed for first occupancy

[9] 42 U.S.C. § 12181(b)(2)(A)(iv)
[10] 42 U.S.C. § 12181(b)(2)(A)(ii)
[11] 42 U.S.C. § 12181(b)(2)(A)(iii)

subsequent to January 26, 1993[12] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

39. Pursuant to 28 CFR § 36.402(a)(1) "any alteration" made to the Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Maurer, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[13] Discovery in this matter will reveal if and when such alterations have taken place at the Property, and to what corresponding technical and scoping specification the Defendant must meet/exceed to bring the Property into compliance with the ADA.

40. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element must comply with or be modified to meet. Those are defined as follows:

a. Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

b. Elements that have existed prior to and have not been altered since on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with either the 1991 Standards or the 2010 Standards.

c. Elements that have been altered on or after March 15, 2012, that do not comply with the 1991 Standards must be modified to comply with the 2010 Standards.

---

[12] as defined by 28 CFR § 36.401(a)(2)

[13] 28 CFR § 36.402(a)(2)

41. Plaintiff is not required to notify the Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiff has found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In his experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

42. Plaintiff is without adequate remedy at law and is suffering irreparable harm, including injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiff and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a permanent injunction.

43. Pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505, Plaintiff is entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

44. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Property and make such readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the Property until such time as the Defendant cures all violations of the ADA.[14]

**WHEREFORE,** Plaintiff respectfully demands;

a. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

b. Injunctive relief against the Defendant including an order to (1) cure all ADA violations existing at the Property listed herein and those later found through discovery within the

---

[14] 42 U.S.C. § 12188(b)(2)

next six months; (2) to make the Property accessible to and usable by individuals with disabilities; and (3) to require the Defendant to make reasonable modifications in policies, practices or procedures, to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An Order requiring the Defendant to cease its discriminatory practices and to maintain the requisite accessible features at the Property – as required by the ADA.

d. An award of attorney's fees, costs, and litigation expenses (including expert fees and costs) pursuant to 42 U.S.C. § 12205.

e. Such other relief as the Court deems just and proper and is allowable under Title III of the ADA.

## COUNT II

### Violation of New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq.

45. Plaintiff realleges and incorporates, by reference, all of the allegations contained in all of the preceding paragraphs.

46. The Property is a place of public accommodation as defined by N.J.S.A 10:5-5.

47. New Jersey law provides that all persons shall have the opportunity to obtain all the accommodations, advantages, facilities, and privileges of any public place of accommodation without discrimination on the basis of disability. This opportunity is recognized and declared to be a civil right.[15]

48. As set forth above, the Defendant has violated the LAD by denying Mr. Maurer, and all

[15] Pursuant to N.J.S.A 10:5-4

other mobility impaired persons, the full and equal enjoyment of the goods, facilities, services, and accommodations available at the Property.

49. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Maurer has sustained injury in the form of emotional distress, mental anguish, dignitary harm, and humiliation, in violation of the LAD.

**WHEREFORE**, Plaintiff respectfully demands;

a. That this Court assume jurisdiction.

b. The Court issue a Declaratory Judgment determining that the Defendant is in violation of the LAD.

c. An injunction ordering Defendant to immediately comply with the LAD by removing all architectural barriers listed herein or later found through discovery.

d. A monetary award consisting of the individual Plaintiff's damages – to the maximum extent permitted, attorney's fees, and litigation expenses; including expert's fees and costs.

e. An order requiring the Defendant to cease discriminatory practices and to maintain the requisite accessible features at the Property – as required by the LAD.

f. Other relief that this Court deems just and proper and is allowable under the LAD.

Respectfully submitted on this 6th day of October 2026,

*<u>/s/ Jon G. Shadinger Jr.</u>*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
2220 N East Ave
Vineland, NJ 08360
(609) 319-5399
js@shadingerlaw.com
*Attorney for Plaintiff, Dennis Maurer*